PETTY, Judge.
Ronald Taft Davis, III, appeals his convictions of first-degree murder and attempted first-degree murder.[1] On appeal, Davis argues: (1) the trial court erred in denying his motion for collateral estoppel to bar prosecution of the charges due to his acquittal on the charge of reckless handling of a firearm; (2) the trial court erred in not granting his motion for a mistrial after the Commonwealth’s Attorney mentioned Davis’s invocation of his Miranda rights during both opening statements and direct examination of law enforcement; and (3) the trial court erred in denying Davis’s motion for mistrial after a witness testified that Davis had a criminal charge for which he received a two-year sentence. For the following reasons, we reverse the judgment of the trial court.[2]
I. Background
“On appeal, ‘we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.’ ” Archer v. Common *49 wealth, 26 Va.App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va.App. 438, 443, 358 S.E.2d 415, 418 (1987)). Furthermore, collateral estoppel is a legal doctrine “grounded in the Fifth Amendment guarantee against double jeopardy.” Rhodes v. Commonwealth, 223 Va. 743, 747, 292 S.E.2d 373, 375 (1982). Therefore, we apply the de novo standard of review applicable to double jeopardy claims to determine whether collateral estoppel applies. See Davis v. Commonwealth, 57 Va.App. 446, 455, 703 S.E.2d 259, 263 (2011).
On November 16, 2008, Davis was arrested and charged with shooting into an occupied vehicle, first-degree murder, use of a firearm during the commission of murder, and reckless handling of a firearm.[3] The charges arose from an altercation during which Davis allegedly fired ten or more bullets into an occupied car parked outside a nightclub. A passenger of the car was killed as a result of the shooting. On December 16, 2008, the General District Court of Surry County conducted a preliminary hearing on the felonies. During the course of the preliminary hearing, the district court judge realized that there was a pending misdemeanor charge of reckless handling of a firearm[4] arising from the same incident. The Commonwealth’s Attorney advised the judge that it was his intention to proceed to try the misdemeanor concurrently with the preliminary hearing on the felonies; Davis then entered a plea of not guilty to the misdemeanor charge. At the conclusion of the Commonwealth’s evidence at the preliminary hearing, the judge dismissed the misdemeanor reckless handling of a firearm charge and the felonies were not certified. The judge noted,
*50 On the issue of probable cause, clearly the Commonwealth has met its burden as to whether a felony was committed or not — felonies. On the issue of whether or not [the Commonwealth’s Attorney has] shown it reasonable to believe Mr. Davis was the one that fired the weapon, I find that you have not met that burden, and I find no probable cause.
On the misdemeanor charge as to whether or not [the Commonwealth’s Attorney has] proven the case beyond a reasonable doubt, I would find that you have not. I’m going to find him not guilty of that charge.
The Commonwealth then obtained direct indictments against Davis for the felonies of attempted murder, murder, use of a firearm in the commission of an attempted capital murder, and two counts of attempted capital murder. Davis made a motion to the circuit court to dismiss those indictments based on the doctrine of collateral estoppel.[5] The circuit court denied the motion, noting that the judgment of acquittal on the misdemeanor reckless handling of a firearm charge was based on a general verdict.[6] The circuit court stated that the district court order did not specify which element of the offense was not proved beyond a reasonable doubt and “merely placed a checkmark in the printed square on the reverse side of the warrant designated, ‘not guilty’ and T ORDER the charge dismissed.’ ”[7] Thus, the Commonwealth proceeded with the prosecution of Davis on the felonies in the circuit court. Following the trial, Davis was convicted of first-degree murder and attempted first-degree murder.
*51 II. Analysis
Davis argues that the trial court erred in denying his motion to dismiss both felonies because his acquittal on the reckless handling of a firearm charge collaterally estopped the Commonwealth from prosecuting him on the felonies involving the use of a firearm. We agree.
Collateral estoppel is a preclusion doctrine “grounded in the Fifth Amendment guarantee against double jeopardy.” Rhodes, 223 Va. at 747, 292 S.E.2d at 375.[8] “It stands for [the] extremely important principle in our adversary system of justice ... that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.”[9] Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. *52 1189, 1194, 25 L.Ed.2d 469 (1970). Furthermore, “[t]he party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he seeks to now preclude.” Rhodes, 223 Va. at 749, 292 S.E.2d at 376. However, “[t]he doctrine ... does not apply if it appears that the prior judgment could have been grounded ‘upon an issue other than that which the defendant seeks to foreclose from consideration.’ ” Lee v. Commonwealth, 219 Va. 1108, 1111, 254 S.E.2d 126, 127 (1979) (quoting Ashe, 397 U.S. at 444, 90 S.Ct. at 1194). “Collateral estoppel becomes applicable only when the prior acquittal necessarily resolved the issue now in litigation.” Simon v. Commonwealth, 220 Va. 412, 418, 258 S.E.2d 567, 571 (1979).[10]
As the Supreme Court stated in Jones v. Commonwealth, 217 Va. 231, 228 S.E.2d 127 (1976),
Ashe requires that the question whether the rule of collateral estoppel applies in a given case is to be approached “with realism and rationality.” The Court established these guidelines: “Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this [realistic and rational] approach requires a court to ‘examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its *53 verdict upon an issue other than that which the defendant seeks to foreclose from consideration.’ ”
Id. at 233, 228 S.E.2d at 129 (alteration in original) (quoting Ashe, 397 U.S. at 444, 90 S.Ct. at 1194).
Furthermore,
[t]he inquiry “must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.” Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based on a general verdict of acquittal.
Ashe, 397 U.S. at 444, 90 S.Ct. at 1194 (quoting Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180 (1948)).
We find the Supreme Court’s decision in Lee controlling in this case. In that case, Lee was acquitted for a misdemeanor driving under a revoked license charge, while two felony charges — manslaughter and hit-and-run — were certified to trial. 219 Va. at 1109, 254 S.E.2d at 126. At the trial on the felonies, the parties stipulated that the prior acquittal rested on the Commonwealth’s failure to prove that Lee had operated his vehicle on the day in question, an ultimate fact on all three charges. Id. at 1110, 254 S.E.2d at 127. In determining whether collateral estoppel precluded trial on the felonies, the Court analogized the United States Supreme Court’s decision in Ashe, noting, “Here, ... it appears from the express language of the stipulation that the judgment of dismissal, like the jury’s verdict in Ashe, was based on insufficiency of the evidence [that Lee operated his vehicle on the day in question], the particular ground assigned by defendant in his motion to dismiss.” Id. at 1111, 254 S.E.2d at 127. Therefore, the Court held that a judgment of dismissal of the misdemeanor warrant of driving under a revoked license collaterally estopped the Commonwealth from prosecuting Lee for manslaughter and hit-and-run driving. Id.
Here, Davis was convicted of two felonies — first-degree murder and attempted capital murder — after the district court dismissed the misdemeanor charge of reckless handling of a *54 firearm.[11] While there was no stipulation in this case, the judge announced his factual finding that the Commonwealth had not “shown it reasonable to believe Mr. Davis was the one that fired the weapon.” Furthermore, the district court judge’s very next statement was that he was dismissing the misdemeanor charge because the Commonwealth had not proved its case beyond a reasonable doubt with respect to that charge. The Commonwealth’s evidence established that only one person fired the weapon. Thus, from the district court judge’s stated factual finding that Davis did not fire the weapon, the only rational conclusion that can be drawn is that the acquittal was based on the Commonwealth’s failure to prove “that the defendant was the criminal agent, an essential element [of all] of the offenses.” Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 381 (1988).
Moreover, to the extent the verdict noted on the back of the warrant for arrest was a general verdict, we are required to “ ‘examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational [trier of fact] could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.’ ” Jones, 217 Va. at 233, 228 S.E.2d at 129 (quoting Ashe, 397 U.S. at 444, 90 S.Ct. at 1194).
The Commonwealth offered testimony of four witnesses. Of those four witnesses’ testimony, not one actually saw Davis shoot, or even handle, a gun on the night of the shooting. The most incriminatory evidence the Commonwealth was able to offer was a witness’ statement that Davis was wearing mostly black clothes on the night of the shooting, and the person seen shooting the gun was wearing black. Although the witness testified that he knew Davis, when asked if the person he saw *55 shoot the gun was Davis, he responded, “I can’t say. I don’t know if it was him or not.” Although one witness testified that he had previously made a statement to the police that Davis had told him that Davis had disposed of a gun, the witness denied the legitimacy of that statement at the preliminary hearing and said that he did not see Davis with a gun and did not know what gun Davis was referring to.[12] Furthermore, one witness testified that someone else, other than Davis, had a gun that night. Specifically, the witness testified that the driver of the car in which the victim was sitting when he was killed pointed a gun from inside the car at the witness’ sister and out the back of the car.
Finally, the fact that it was the identity of the gunman that was the sole issue presented to the district court judge is evidenced by the argument of counsel. The Commonwealth’s only argument at the conclusion of the evidence was: “certainly we have linked the defendant by a preponderance of the evidence to this murder, and I would ask that it be certified.” [13] In response, the defense attorney argued that
the Commonwealth has not established by a preponderance of the evidence any criminal agency on the part of Mr. Davis in this matter. There hasn’t been any linkage of the criminal agency with that of Mr. Ronald Davis. And even at this juncture, we respectfully request the dismissal of the felony indictments, and we would request a dismissal of the reckless endangerment misdemeanor [charge] because the Commonwealth has not met its evidence on that matter as well.
Thus, the judge’s factual finding, when read in the context of the evidence presented by the Commonwealth and the argument of counsel, simply does not support a conclusion that the misdemeanor acquittal was based on any element of any of *56 the offenses under consideration other than the identity of the criminal agent. Simply put, based on the evidence presented at the preliminary hearing, a finding that Davis did not fire the firearm means he did not handle the firearm. Thus, any consideration of the reckless element of the offense would be superfluous.[14] Therefore, it is abundantly clear that the verdict in the misdemeanor trial was grounded on the very issue that Davis sought to preclude from reconsideration in the subsequent murder trial — whether Davis was the gunman.
In sum, from a review of the evidence presented and considering the specific factual finding made by the district court judge, we conclude that this is “ ‘the rare case where it was possible to determine with certainty what the [trier of fact] in the earlier prosecution had decided.’ ” Jones, 217 Va. at 233, 228 S.E.2d at 128 (quoting United States v. Cioffi, 487 F.2d 492, 498 (2d Cir.1973)). Since the district court judge, in acquitting Davis of the misdemeanor, held that the Commonwealth had failed to establish that Davis was the gunman, the Commonwealth was precluded from relitigating that fact in the prosecution of the crimes of murder and attempted murder arising out of the same event.[15] Therefore, we hold that Davis’s convictions below must be reversed and the indictments dismissed based on the doctrine of collateral estoppel.
In doing so we note,
*57 “ ‘[I]t is well established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth’s Attorney.’ Indeed, ‘the institution of criminal charges, as well as their order and timing, are matters of prosecutorial discretion.’ ”
Barrett v. Commonwealth, 268 Va. 170, 178, 597 S.E.2d 104, 107-08 (2004) (citations omitted) (quoting Barrett v. Commonwealth, 41 Va.App. 377, 391, 585 S.E.2d 355, 362 (2003)). However, that discretion must be exercised with the “ ‘thoroughness and preparation reasonably necessary for the representation’ of his client, the Commonwealth.” Livingston v. Va. State Bar, 286 Va. 1, 12, 744 S.E.2d 220, 225 (2013) (quoting Va. R. Prof'l Conduct 1.1). That “includes ‘inquiry into and analysis of the factual and legal elements of the problem.’ ” Id. (quoting Va. R. Prof'l Conduct 1.1 cmt. 5). The Supreme Court’s lament in Lee bears repetition in this case:
Our holding results in the reversal of two convictions which were fully supported by the evidence at trial. Yet, we believe the result is constitutionally mandated and illustrates the need for the Commonwealth to assess the evidence carefully and exercise selective discretion in the prosecution of multiple offenses arising from the same transaction.
Lee, 219 Va. at 1111, 254 S.E.2d at 127.
III. Conclusion
For the foregoing reasons, the judgment is reversed and the felony indictments are dismissed. We remand to the trial court for the sole purpose of amending its records to show the correct offense description of attempted capital murder for case numbers CR10025 and CR10026.

Reversed, dismissed, and remanded.

. Davis was originally indicted for attempted murder, murder, use of a firearm in the commission of attempted capital murder, and two counts of attempted capital murder (erroneously listed as two counts of capital murder on the amended order of conviction dated June 27, 2012). Prior to the trial, the Commonwealth’s Attorney moved to nolle prosequi the indictments for attempted murder and one of the counts of attempted capital murder. The jury found Davis guilty of first-degree murder and attempted first-degree murder and found him not guilty of use of a firearm in the commission of attempted capital murder.

. Because we hold that the Commonwealth is collaterally estopped from prosecuting Davis on the felony charges, we need not consider Davis's second and third assignments of error.

. The arrest warrants for these charges were obtained by Surry County Deputy Sheriff R.L. Sears without any apparent consultation with the Commonwealth’s Attorney.

. Code § 18.2-56.1 provides, "It shall be unlawful for any person to handle recklessly any firearm so as to endanger the life, limb or property of any person. Any person violating this section shall be guilty of a Class 1 misdemeanor.”

. A transcript of the preliminary hearing and a copy of the misdemean- or warrant were introduced into evidence in the circuit court during the hearing on the motion to dismiss.

. A general verdict is one “by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions.” Black’s Law Dictionary 1696 (9th ed.2009).

. While the district court did not have jurisdiction to enter final judgment on the felony charges, it is without question that it did have jurisdiction to do so on the misdemeanor offense. See Code § 16.1— 123.1(1).

. The dissent argues that "this case is largely about the proper limits of judicial power.” In reality, the protections afforded by the Double Jeopardy Clause of the Fifth Amendment, and the principle of collateral estoppel embodied in that guarantee, serve as a limit on prosecutorial abuses by the government.
The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Justice Oliver Wendell Holmes wrote of the principle,
The safeguard provided by the Constitution against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the Fifth Amendment was not intended to do away with ... a fundamental principle of justice, in order, when a man once has been acquitted on the merits, to enable the Government to prosecute him a second time.
United States v. Oppenheimer, 242 U.S. 85, 88, 37 S.Ct. 68, 69, 61 L.Ed. 161 (1916) (citation omitted).

. The dissent cites Standefer v. United States, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), in its argument that Davis’s acquittal on the misdemeanor charge should not preclude his prosecution on the felony charges. Standefer, however, involved a very different issue— “whether a defendant accused of aiding and abetting in the commission *52 of a federal offense may be convicted after the named principal has been acquitted of that offense.” Id. at 11, 100 S.Ct. at 2001. The language quoted by the dissent is the Court's rationale for refusing to extend the doctrine of collateral estoppel to situations where there is no mutuality of parties; it is not a justification for ignoring the long recognized doctrine when, as here, mutuality clearly exists.

. It is clear that Davis's trial for murder and attempted murder was subsequent to, and not concurrent with, his prosecution for reckless handling of a firearm. While the same charges were heard at the preliminary hearing, they were dismissed by the district court. Thus, the subsequent indictments in the circuit court constituted a new and separate prosecution. See Wright v. Commonwealth, 52 Va.App. 690, 701, 667 S.E.2d 787, 792 (2008) (en banc) (recognizing that when an original charge is terminated in the district court, a new indictment for the same offense is a new charge, distinct from the original charge).

. The deputy sheriff stated that he charged Davis with "maliciously shoot[ing] into an occupied vehicle, first-degree murder, display in a threatening manner a firearm while committing or attempting to commit murder, and reckless handling of a firearm” all at the same time. Thus, it is apparent that the misdemeanor charge was part and parcel of the same incident as the murder and attempted murder.

. Additionally, it is clear that this evidence was introduced for the limited purpose of impeaching the witness, not to prove Davis's culpability.

. The Commonwealth’s Attorney did not address any of the other elements that would be required to be proven in order to convict Davis of reckless handling of a firearm.

. The Commonwealth argues that a dismissal of a reckless charge, in itself, does not preclude a later conviction of an intentional crime because a finding of an absence of recklessness would not bar a later finding of an intentional act. This ignores the fact that the element under consideration is not the way the firearm was used, but, rather, who used it.

. We note, as Davis points out in his brief before this Court, that while it is arguable that the misdemeanor dismissal would not serve as a bar to prosecute the defendant as a principal in the second degree, the indictment and the jury instructions make it clear that Davis was convicted as a principal in the first degree. Indeed, the Commonwealth conceded at oral arguments before this Court that at no time throughout the proceedings against Davis did the Commonwealth allege that Davis acted as a principal in the second degree. Thus, we do not need to speculate whether collateral estoppel would bar prosecution under an alternative theory of criminal responsibility.